UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ELENI PERTUZ**                                                          **CIVIL ACTION**

**VERSUS**                                                                **NO. 13-0293-SS**

**SHERIFF NORMAND, et al**

### ORDER

DEFENDANTS' MOTION FOR RECONSIDERATION (Rec. doc. 21)

**DENIED**

Before the Court is the motion of the defendants, Detectives Mark Monson and Henry Conravey and Sheriff Newell Normand, for reconsideration. Rec. doc. 21. For the reasons stated below the motion is denied.

### PROCEDURAL BACKGROUND

On February 19, 2013, the plaintiff, Eleni Pertuz ("Pertuz"), filed a complaint against the defendants alleging federal and state claims for false arrest and excessive use of force during an incident which occurred on February 28, 2012.

On April 18, 2013, Pertuz entered a plea of guilty to charges arising out of the February 28, 2012 incident. This plea was vacated on January 13, 2014. On that day, she pled guilty to an amended charge under La. R.S. 14:108 (Resisting an Officer). Rec. doc. 19 (Exhibit 3). A form was completed by Pertuz and signed by her, her lawyer and the judge. The portion signed by the judge includes the statement that, "I find that there is a factual basis which exists for the defendant to plead guilty to the above mentioned claims." Rec. doc. 16 (Exhibit 1 at 3).

The parties consented to proceed before the assigned Magistrate Judge. Rec. doc. 11. Defendants moved to dismiss, rec. doc. 16, contending that, pursuant to Heck v. Humphrey, 512

U.S. 477, 114 S.Ct. 2364 (1994), her claims should be dismissed. Pertuz responded that Heck did not require the dismissal of her claim for excessive force. Rec. doc. 19. Defendants did not reply.

On February 3, 2014, defendants' motion was denied as to the excessive force claim, claims for assault and battery under Louisiana law and the state law respondeat superior claim against Sheriff Normand. The motion was granted as to Pertuz's claims for false arrest and her Monell claims against Sheriff Normand. The undersigned concluded that this followed from the fact that, while Pertuz pled guilty to resisting an officer (La. R.S. 14:108), she did not plead guilty to felony resisting an officer with force or violence (La. R.S. 14:108.2).

Defendants moved for reconsideration. Rec. doc. 21. Pertuz opposes the motion. Rec. doc. 25.

## FEBRUARY 28, 2012

The police report indicates that on February 28, 2012 at about 11:15 a.m., Detectives Mark Monson and Henry Conravey were assigned to a street crimes unit, when they made an investigative stop at 5836 Segnette Drive in Marrero. Rec. doc. 16 (Exhibit) (hereafter "Police Report"). At that time Michael Durkes and Pertuz were parked in a car in the yard at that address. They had stopped to see a friend, who lived there. Rec. doc. 19 (Exhibit 1 at 1) (hereafter "Pertuz Affidavit"). The officers state that they detected burning marijuana. Police Report, rec. doc. 16 (Exhibit 1).

Pertuz alleges that: (1) the detectives ordered her and Durkes out of the car; (2) they complied; (3) Detective Monson began searching the car without permission; (3) she objected to the search; (4) she called her grandmother on her cell phone; and (4) she yelled at Detective Monson to stop searching the car. Pertuz Affidavit at 2. The officers state that Durkes exited the

car and approached Detective Conravey. Pertuz exited the front passenger seat and began shouting at the detectives to get out. When she noticed Detective Monson conducting an inspection of the passenger compartment, she began shouting at him to show her his warrant. Police Report.

At this point, the parties' stories diverge. Pertuz alleges that: (1) Detective Monson picked her up and carried into the front yard; (2) she did not resist or strike him while she was being carried; (3) Detective Monson picked her up over his head; (4) she squirmed to break free; and (5) he slammed her to the ground. She contends that she did not resist his physical seizure of her. Pertuz Affidavit at 2. The detectives contend that: (1) Detective Monson attempted to calm Pertuz down; (2) she fled across the yard; (3) he pursued and caught her; (4) she struck him with a closed fist; and (5) after a brief struggle, Pertuz was directed to the ground where she was cuffed. Police Report.

Pertuz presents the affidavit of Sherry Tolar to corroborate her version of the events. Rec. doc. 19 (Exhibit 2). Ms. Tolar's oldest son is a friend of Pertuz.

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment

4

must be granted.  See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

## **ARGUMENTS OF THE PARTIES**

The defendants rely on Heck and Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996).  They contend that:  (1) Pertuz is precluded from proceeding with her excessive force claim because a finding of liability would necessarily imply the invalidity of her criminal conviction for resisting an officer; and (2) based on Detective Monson's allegation that Pertuz punched him in the throat, he was justified in using force to overcome Pertuz's resistance by forcing her to the ground. (Rec. doc. 16 at 12 and 14).

Pertuz responds with two arguments.  First, her version of the events in support of her excessive force claim is not inconsistent with her conviction for resisting an officer.  She urges that her version supports both the conviction and the excessive force claim.  Second, even if the facts underlying the excessive force claim were bound up with the factual basis for her conviction, the force used was so excessive and punitive that Heck does not bar the claim.  Rec. doc. 19 at 7.

In their motion to reconsider, the defendants make several arguments.  First, they argue that Pertuz's guilty plea is an admission that she resisted her lawful arrest by force.  They contend that:  (1) the judge reached a determination regarding the factual basis for Pertuz's plea (2) there is nothing in the record to indicate that Pertuz pled guilty to any factual basis other than that contained in the Police Report; (3) the issue of her factual guilt is not an issue; and (4) her excessive force claim is barred by Heck.  Rec. doc. 21 (Memorandum at 6-9).  Second, the defendants contend Pertuz's claims are inconsistent with her conviction for resisting an officer

5

and are barred by Heck. The defendants cite Payton v. Normand, et al, CA 13-310 (Rec. doc. 18) (E.D. La. 12/30/13) (Vance, C.J.). Third, Pertuz' reliance on Bush v. Strain, 513 F.3d 491 (5th Cir. 2008) is misplaced. The facts underlying Pertuz's guilty plea, interfering with the search, are not temporally and conceptually distinct from the facts underlying her excessive force claim.

## ANALYSIS

1. The Police Report.

The defendants contend that there is nothing in the record to suggest that Pertuz pled guilty to any factual basis other than that contained in the Police Report. Pertuz replies that the state court judge did not make a determination of what facts constituted the factual basis for the plea and there is no statement by the judge crediting the Police Report as the basis for the plea.

The statement found in the form signed by the state court judge only provides that, "I find that there is a factual basis which exists for the defendant to plead guilty to the above mentioned claims." Rec. doc. 16 (Exhibit 1 at 3). That is insufficient to determine that the state court judge credited the entirety of the Police Report.

2. Hudson v. Hughes.

In Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996), the Fifth Circuit considered the impact of Heck on the plaintiff's section 1983 claims for excessive force and false arrest. After a trial, the plaintiff was convicted as a felon in possession of a firearm and battery of an officer. The Fifth Circuit concluded that none of the plaintiff's section 1983 claims could proceed. As to the false arrest claim, it stated that, "a successful section 1983 action for false arrest on burglary charges necessarily would imply the invalidity of Hudson's conviction as a felon in possession of a firearm. . . ." 98 F.3d at 872.

As to plaintiff's claim for excessive force, the Fifth Circuit stated,

> Hudson was arrested and convicted of battery of an officer. In Louisiana, self-defense is a justification defense to the crime of battery of an officer. To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that (the) Officers . . . used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.

98 F.3d at 873 (citations omitted). Pertuz was not convicted of battery of an officer but instead was convicted of resisting an officer. Pertuz's conviction does not raise the justification defense issue found in Hudson.

3. Bush v. Strain.

In Bush v. Strain, 513 F.3d 492 (5th Cir. 2008), plaintiff sued defendants under Section 1983 for excessive force, illegal arrest and conspiracy. In state criminal proceedings, plaintiff was convicted of resisting arrest under La. R.S. § 14:108 and acquitted of a battery charge. Defendants' motion for summary judgment was granted. They argued that Heck barred all of plaintiff's claims. The Fifth Circuit reversed, stating:

> [A] § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck,* if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim. Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance. In this case, there is conflicting evidence about whether Bush was injured before or after her resistance ceased, and the crux of the dispute is whether the factual basis for Bush's excessive force claim is inherently at odds with the facts actually or necessarily adjudicated adversely to Bush in the criminal proceeding.

513 F.3d at 498.

In Bush, there was agreement that: (1) the police officer was interviewing a witness, when plaintiff walked up; (2) plaintiff became enraged at a comment by the witness; (3) plaintiff threw a cup of water on the witness; (4) the police office attempted to arrest plaintiff for simple battery; and (5) when plaintiff was partially handcuffed, she pulled her right arm away in an attempt to intimidate the witness. At this point the parties' stories diverged. The plaintiff contended that: (1) she stopped resisting after the police officer grabbed her right hand; (2) she was handcuffed; and (3) after she ceased her resistance and both hands were cuffed, the police officer placed his hand behind her neck and head and forced her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth. The plaintiff presented two witnesses to corroborate her version of the events. Id. at 496.

The Fifth Circuit concluded,

> Because Bush has produced evidence that the alleged excessive force occurred after she stopped resisting arrest, and the fact findings essential to her criminal conviction are not inherently at odds with this claim, a favorable verdict on her excessive force claims will not undermine her criminal conviction.

513 F.3d at 500.

Pertuz contends Bush demonstrates her claim for excessive force must be allowed to proceed. Pertuz contends that while she interfered with the search of the vehicle, her resistance stopped once Detective Monson picked her up and carried her into the front yard. Thereafter the only thing she did was squirm to break free when Detective Monson picked her up over his head. Pertuz argues that like Bush the alleged excessive force occurred after she stopped resisting arrest. One distinction ignored by Pertuz is that the plaintiff in Bush contended the excessive force occurred after she was handcuffed and restrained. Pertuz alleges that the excessive force occurred before she was restrained with handcuffs and while she was "squirming" to break free.

8

At the time that Pertuz alleges that the excessive force occurred, the only restraint on her was that Detective Monson had picked her and carried her into the front yard.

4. Payton v. Normand.

The defendants contend that Payton v. Norman demonstrates that Bush is inapplicable.

On February 26, 2012, there was a domestic disturbance at 718 Oriole Street in Metairie between James Young and Dawn Elsey. CA 13-310 (Rec. doc. 16 – Exhibit 3 – Dawn Elsey Affidavit at 1 ["Elsey Affidavit"]) and (Rec. doc. 12 – Exhibit 2 – Police Report ["Police Report"]). After the disturbance, Young left 718 Oriole in a vehicle which contained clothing belonging to Elsey's mother, Gayl Payton. Elsey Affidavit at 2.

At about 9:00 p.m. on the evening of February 27, Young returned to 718 Oriole with his cousin and a friend to retrieve his belongings from the house. Police Report. Deputies Julian and Iannazzo were dispatched to 718 Oriole at about 9:15 p.m. in response to a complaint from Young. Police Report. Elsey alleged that Young requested that the two deputies meet him at 718 Oriole while he retrieved his belongings. Elsey Affidavit at 2.

The Deputies reported that Elsey interfered with their attempt to speak to Young. Police Report. Elsey reported that she wanted to pursue domestic violence charges against Young. The Deputies told her that if she did so, she would be arrested as well. Elsey Affidavit at 2. Elsey called her mother, Payton, to ask her to retrieve her four children (ages 2, 4, 6 and 12). Elsey Affidavit at 2. At the request of the Deputies, Young got inside his cousin's vehicle on the front passenger side. Police Report. When Payton arrived, she pulled her car directly behind the vehicle in which Young was seated. Elsey Affidavit at 2 and Police Report. At this point the stories diverge.

Payton alleged that: (1) she walked over to Young; (2) she stood outside the passenger side of the vehicle; (3) she demanded the return of her belongings; (4) he ignored her; (5) she repeated her demand; (6) suddenly and without warning she was grabbed from behind in a bear hug; (7) as she struggled to free herself, her right arm was violently pulled up behind her back causing shoulder pain; and (8) she was forced to the ground. At no time was she told to step away from the vehicle in which Young was sitting, and she was not told she was under arrest. Payton at 2. Elsey confirms Payton's allegations and states that it was Deputy Julian who grabbed Payton from behind and Deputy Iannazzo who grabbed her right arm. Elsey at 2-3.

The Deputies alleged that: (1) as Payton exited her vehicle, she began cursing Young; (2) they gave her multiple verbal commands to calm down and leave the scene because she was interfering with their investigation; (3) she did not comply; (4) she was advised she was under arrest; (5) while attempting to arrest her, she resisted by pulling away and shouting obscenities; (6) while the Deputies were placing Payton in handcuffs, Elsey bit Deputy Iannazzo on the wrist; (7) Elsey was directed to the ground by Deputy Iannazzo; (8) Payton continued resisting; and (9) Deputy Julian un-holstered his Taser and ordered Payton to the ground. Police Report.

Payton was charged with resisting a police officer with force or violence. She entered an Alford plea to the misdemeanor charge (La. R.S. § 14:108) of interfering with law enforcement officers. She denied she was guilty of that offense. Her complaint stated that the allegation that she interfered with the police was false. CA 13-310 (Rec. doc. 18 at 3) (hereafter "Payton"). Payton sued the Deputies and Sheriff Norman for section 1983 claims for false arrest, false imprisonment and use of excessive force. Payton at 4. The defendants moved for summary judgment based on Heck. Payton conceded that her claims for false arrest and false imprisonment were barred by Heck. Payton at 10-11.

On her excessive force claim, Payton made an argument similar to that accepted in Bush. She contended that the interference on which her conviction was based occurred before the alleged use of excessive force. Payton at 12. Judge Vance found that this was at odds with Payton's complaint, her sworn testimony and her daughter's sworn testimony that "[p]laintiff has consistently denied interfering with Julian and Iannazzo." Payton at 13.

The defendants' motion for summary judgment on the excessive force claim was granted. Judge Vance distinguished Bush, and stated:

> In *Bush*, the plaintiff's version of events made out an excessive force claim, while still admitting conduct that could have formed the basis for her conviction. In other words, the plaintiff's story was consistent with both her criminal conviction and her section 1983 claim. Here, in contrast, Payton's version of events is inconsistent with her conviction (misdemeanor charge of interfering with law enforcement officers). Accordingly, her excessive force claim is barred under *Heck*.

CA 13-310 at Rec. doc. 18 at 17 (hereafter "Payton").

When a district court confronts a section 1983 action for damages that implicates a conviction, the district court must determine whether a ruling on the excessive force claims would necessarily imply the invalidity of the conviction. Payton at 9. If Pertuz's action, even if successful, will not demonstrate the invalidity of a criminal judgment against her, the action should be allowed to proceed. Payton at 9.

To succeed on an excessive force claim, a plaintiff bears the burden of showing: (1) an injury; (2) which resulted directly and only from the use of force that was excessive to the need; and (3) the force used was objectively unreasonable. Payton at 11. The court is required to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction. Payton at 11.

11

When a defendant moves for summary judgment on the ground that the plaintiff's claim is barred by Heck, the court must review the sequence of events as alleged by the plaintiff and determine whether that sequence of events is inconsistent with the underlying criminal conviction. Payton at 14.

There is some ambiguity between Pertuz's description of the events in her affidavit and her complaint. Her complaint states that,

> The allegation that the petitioner resisted arrest with force or violence is false. At no point in time did the petitioner resist a lawful arrest.

Rec. doc. 1 at 5. The first sentence is consistent with Pertuz's affidavit. She argues that the second sentence must be read in the context of the first sentence in that she denies resisting arrest with force or violence. Elsewhere in her complaint Pertuz admits to objecting to (interfering with) the search. Rec. doc. 1 at 3. This is consistent with her affidavit.

Like the plaintiff in Bush, Pertuz submits evidence (her statement and Tolar's statement) that the alleged excessive force occurred after she was carried by Detective Monson to the yard.

For Pertuz, the alleged sequence begins with her yelling at Detective Monson to stop searching her vehicle, followed by Detective Monson carrying her into the yard, lifting her up overhead, then throwing her down. Pertuz's story is consistent with her criminal conviction for resisting an officer and her section 1983 excessive use of force claim.

IT IS ORDERED that defendants' motion for reconsideration (Rec. doc. 21) is DENIED.

New Orleans, Louisiana, this 25th day of March, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**